Feeley, Timothy Q., J.
By verified complaint filed on September 18, 2008 plaintiff Monteiro Electric, Inc. (“Monteiro”) seeks injunctive relief and damages against Monteiro Industrial Electric, Inc. (“Monteiro Industrial”). The factual circumstances can almost be guessed from the caption. Monteiro is an established and fairly substantial company, and Monteiro Industrial is a newer and much smaller company doing similar business in the same area in Central Massachusetts. Monteiro argues that Monteiro Industrial is taking unfair advantage of Monteiro’s good will and reputation, and harming Monteiro in the process. Monteiro asks this court to put a stop to Monteiro Industrial’s use of the Monteiro Industrial name. For the reasons discussed below, the court agrees with Monteiro and will issue a preliminary injunction, although not to the full extent requested by Monteiro.

BACKGROUND

Monteiro is owned and operated by Dennis Monteiro. Although it only incorporated under its current name in September 2003, Dennis Monteiro began working as Monteiro Electric in June 1996, when he obtained his master electrician’s license. Monteiro registered its trade name (Monteiro Electric, Inc.) and logo with the Secretary of the Commonwealth on June 13, 2007. Monteiro originally operated out of Hudson, Massachusetts, but moved its location to Berlin, Massachusetts. Its business area includes both towns and the surrounding Metrowest communities. Monteiro has grown significantly since its inception. It has five full-time professional employees, and maintains a fleet of seven trucks bearing its registered name and logo. Its gross sales in 2007 exceeded $700,000. Monteiro claims a sterling reputation, never having been sued for services performed, and never having been the subject of a complaint to any consumer protection agencies.
Guilherme Monteiro is the owner/operator of Monteiro Industrial. The company was incorporated on May 1, 2008. He is a master electrician only since March 2008, and operates out of Hudson, Massachusetts. According to his opposition to plaintiffs request for injunctive relief, he began his own electrician’s business in 2004, working primarily as “G. Bill Monteiro.” He uses a single truck lettered with his corporate name on its sides. Photographs of the respective trucks show marked similarities between Monteiro Industrial’s one white van/truck and three of Monteiro’s white panel trucks. As alleged by Monteiro, Monteiro Industrial’s truck looks like it is part of Monteiro’s fleet of trucks. Both companies’ trucks have a phone number beginning with area code (978). Both companies’ trucks advertise for both commercial and residential work. Both companies use a distinctive horizontal line to separate parts of the display advertisements on the sides of the trucks. Monteiro’s trucks have a thick horizontal line, with an electrician’s logo in the middle. Monteiro Industrial’s truck has a double horizontal line, broken in the middle by a space between short vertical lines attached to the ends of the horizontal lines in a “T” configuration. The only difference in the name of the respective companies on the trucks is the word “INDUSTRIAL,” in lettering about half the size, and underneath the word “MONTEIRO,” on Monteiro Industrial’s lone truck. Moreover, one of Monteiro’s white trucks also advertises for industrial, as well as residential and commercial work. Otherwise the lettering is identical except for the seven final digits of the telephone numbers of the two companies.

DISCUSSION

In John T. Callahan & Sons, Inc. v. City of Malden, 430 Mass. 124, 130-31 (1991) (quoting Commonwealth v. Mass. CRINC, 392 Mass. 79, 87-88 (1984)), the Supreme Judicial Court articulated the well-established standard for issuance of injunctive relief as follows:
*633 [T]o issue injunctive relief correctly, a judge initially must consider whether the plaintiff has demonstrated that without the relief he would suffer irreparable harm, not capable of remediation by a final judgment in law or equity. Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980). Hie plaintiff also must show that there is a likelihood that he would prevail on the merits of the case at trial. The judge then must balance these two factors against the showing of irreparable harm which would ensue from the issuance, or the denial, of an injunction and the “chance of success on the merits” presented by the defendant. Id. at 617. An injunction may issue properly only if the judge concludes that the risk of irreparable harm to a plaintiff, in light of his chances of success on his claim, outweigh(s) the defendant’s probable harm and likelihood of prevailing on the merits of the case.
In 2006, the Commonwealth of Massachusetts enacted legislation for the registration and protection of trademarks. Acts of 2006, 195, §2, codified at G.L.c. 11 OH, §§1 et seq. A “service mark” is defined in pertinent part as a “word, name, symbol, or device or any combinations thereof used by a person, to identify and distinguish the services of one person, including a unique service, from the services of others, and to indicate the source of the services, even if that source is unknown.” G.L.c. 110H, §1. The statute also provides for injunctive relief as follows:
Likelihood of injury to business reputation or of dilution of the distinctive qualify of a mark registered under this chapter, or a mark valid at common law, or a trade name valid at common law, shall be a ground for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.
G.L.c. 110H, §13. It also provides for damages as follows:
a person who shall:—
(i) use, without the consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of a mark registered under this chapter in connection with the sale, distribution, offering for sale, or advertising of any goods or services on or in connection with which the use is likely to cause confusion or mistake or to deceive as to the source of origin of such goods or services; or
(ii) reproduce, counterfeit, copy or colorably imitate the mark and apply the reproduction, counterfeit, copy or colorable imitation to labels, signs, prints, packages, wrappers, receptacles, or advertisements intended to be used upon or in connection with the sale or other distribution in the commonwealth of such goods or services, shall be liable in a civil action by the registrant for the remedies provided in section [sic] 24 . . .
G.L.c. 11 OH, §12.
In this case, Monteiro registered with the Commonwealth of Massachusetts “Monteiro Electric, Inc.” as a service mark on June 13, 2007. The mark will not expire until June 13, 2012. In its verified complaint, Monteiro alleges that Monteiro Industrial, working in the same geographical area as Monteiro, has infringed on its service/trade mark with a name so similar as to be indistinguishable to the public, and has intentionally chosen its infringing name so as to take advantage of the good will and reputation of Monteiro that has been built up over the years. Monteiro has also alleged incidents of confusion where it alleges that members of the public were confused between Monteiro and Monteiro Industrial. One instance involved Monteiro being billed by a supplier for goods purchased by Monteiro Industrial.
In this case it is perhaps not necessary for this court to engage in a traditional assessment and balancing of irreparable harms, as the trademark statute establishes that the likelihood of dilution of the distinctive qualify of a registered mark “shall be a ground for injunctive relief.” G.L.c. 110H, §13. Essentially, the legislature of this Commonwealth has determined as a matter of law that the likelihood of dilution of a registered mark is sufficient justification for issuance of an injunction in support of a registered mark, even in the absence of competition between the parties or confusion as to the source of goods or services. But in any event, the court concludes that Monteiro Industrial’s display advertising on its truck causes irreparable harm to Monteiro that outweighs any irreparable harm to Monteiro Industrial that will be caused by the ordered injunctive relief. It will be impossible for Monteiro to quantify damages in the form of lost business and revenues from public confusion between the two companies. It will also be impossible for Monteiro to control the qualify of work performed by Monteiro Industrial, or prevent members of the public from attributing the work and reputation of Monteiro Industrial to Monteiro.
The court finds that Monteiro has established the likelihood of dilution of its registered mark and thereby has established a likelihood of success on the merits of its statutory claim. Although the court recognizes that Monteiro Industrial’s truck displays its full corporate name, the court is of the view that the general public would not recognize that two different companies were providing electrician services. The court finds from the record that the public in the Hudson/Berlin area is well familiar with Monteiro and its fleet of trucks that have been servicing the area for years. Given that, the court concludes that a member of the public seeing Monteiro Industrial’s truck would not understand that it was not one of the familiar Monteiro trucks. The phone number, although differ *634 ent, starts with the same area code. The same services (commercial and residential) are offered on both companies’ trucks. Monteiro Industrial’s truck is the same white color as three of Monteiro’s trucks. Most importantly, Monteiro Industrial’s truck uses a distinctive horizontal line in the middle of its truck, dividing its display into two parts, just like the horizontal line on Monteiro’s trucks. Moreover, Monteiro Industrial’s truck highlights the name Monteiro in large letters above the horizontal line, and places the word industrial in smaller letters, below the horizontal line. A member of the public intent on writing down the phone number for Monteiro the next time he or she observed one of its trucks could easily, and the court believes, would, write down Monteiro Industrial’s phone number from its truck thinking that it was the number for Monteiro. Accordingly, the court finds a likelihood of dilution of Monteiro’s registered mark by the use Monteiro Industrial’s use of a similar name, offering the same services, in the same geographical area, with the use of display advertisement on its truck that is easily confused with Monteiro’s registered mark.
The court also finds, for the same reasons, that Monteiro has established a likelihood of success on its common-law trademark infringement claim.
Under the common law of this Commonwealth one whose trade name has acquired a secondary meaning in the minds of the public as indicating the origin of his products or as identifying his goods to them by a trade name has the right to have his trade name protected by securing an injunction to prevent another from using the same name or a name so similar as to mislead the public into buying the defendant’s goods in the belief that they were buying those of the plaintiff and from palming off his goods as those of the plaintiff to the injuiy of the latter.
Monroe Stationers & Printers, Inc. v. Monroe Stationers, Inc., 332 Mass. 278, 280 (1955). The court finds that Monteiro is likely to establish, based on the length, extent, and area of its business, that its trade name has acquired a secondary meaning, warranting protection from Monteiro Industrial’s use of its similar name on its truck.
INJUNCTIVE RELIEF
Crucial to the court’s findings of irreparable harm and likelihood of success on the merits is the use by Monteiro Industrial of its corporate name on its truck. Accordingly, the court will direct its injunctive relief to the offending display advertisement on the truck. The court offers no view as to whether Monteiro Industrial can continue to use its corporate name in some fashion not presented by the facts of this case. The facts before this court compel injunctive relief. Whether injunctive relief would be warranted on other facts that might be presented in the future is not reached by this decision.

ORDER

Accordingly, defendant Monteiro Industrial, Inc., its principals, agents, assigns, and employees, are ORDERED forthwith to remove its current display advertisement from its truck and to refrain in the future from display advertisement on its vehicle(s) that uses its current corporate name.